**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

VNB REALTY, INC.,

                Plaintiff,

        -against-

BANK OF AMERICA CORPORATION;
BANK OF AMERICA, NATIONAL
ASSOCIATION; MERRILL LYNCH,
PIERCE, FENNER & SMITH
INCORPORATED (f/k/a BANC OF
AMERICA SECURITIES LLC); BANC
OF AMERICA MORTGAGE
SECURITIES, INC.; ROBERT CARUSO;
JULIANA JOHNSON; and AASHISH
KAMAT;

                Defendants.

Civil Action No. 11-CIV-6805 (PGG)
ECF Case

**COMPLAINT**

**JURY TRIAL DEMANDED**

---

Plaintiff VNB Realty, Inc. ("VNB" or "Plaintiff"), by its attorneys, Peter N. Tsapatsaris, LLC, and Talcott Franklin, P.C.,[1] for its Complaint against Bank of America Corporation ("BOA Corp."); Bank of America, National Association ("BOA National"); Merrill Lynch, Pierce, Fenner & Smith Incorporated ("MLPF&S"), as successor-in-interest to Banc of America Securities, LLP ("BOA Securities"); Banc of America Mortgage Securities, Inc. ("BOA Mortgage") (collectively, "BOA"); Robert Caruso; Juliana Johnson; and Aashish Kamat (the "Individual Defendants") (together with BOA, the "Defendants") alleges as follows:

---

[1] *Pro hac vice* motion to be submitted

**NATURE OF ACTION**

1.     The genesis of this action is one filed on September 2, 2011, by the Federal Housing Finance Agency ("FHFA"), as conservator of The Federal National Mortgage Association ("Fannie Mae") and The Federal Home Loan Mortgage Corporation ("Freddie Mac") (collectively, "the GSEs"), against the Defendants ("the GSE complaint").[2]   The GSEs asserted causes of action similar to those asserted in this case and arising from the GSEs' purchases of numerous certificates in twenty-three (23) securitizations sponsored or otherwise brought to the market by BOA.   The GSEs alleged, in general, that the Defendants misrepresented the underwriting standards, the loan-to-value ratios ("LTVs"), and the percentage of loans secured by owner-occupied residential properties ("owner-occupied loans").   The GSEs further alleged that those misrepresentations caused the loans to perform far worse than they would have had they been as represented, which poor performance has caused a loss in value of the certificates.   The complaint filed in the GSE lawsuit is incorporated herein by reference and is quoted, paraphrased, and reasserted herein in pertinent part.

2.     One of the securitizations in the GSE lawsuit, known as Banc of America Alternative Loan Trust, Series 2006-1 ("BOAA 2006-1"), is one in which VNB unfortunately invested as well.  On September 29, 2006, VNB purchased the Class 4CB1 certificates in BOAA 2006-1 ("the Certificates").   The Certificates were rated AAA upon issuance and upon purchase by VNB, which paid in excess of $25 million.

---

[2] The case is *Federal Housing Finance Agency v. Bank of America Corp.*, No. 11-CV-6195, in the United States District Court for the Southern District of New York.  Much of this Complaint is taken directly from the GSE complaint, attached as Exhibit 1 to this Complaint, the allegations of which are asserted here on information and belief.

3.     The Certificates were offered for sale pursuant to a shelf registration statement (the "Shelf Registration Statement") filed by BOA Mortgage with the Securities and Exchange Commission (the "SEC") on September 7, 2004, and amended on September 29, 2004, and a prospectus ("Prospectus") and prospectus supplement ("Prospectus Supplement") filed by BOA Mortgage, as "Depositor," and the trust, Banc of America Alternative Loan Trust 2006-1 ("the Trust"), as the "Issuing Entity," on January 30, 2006, with the SEC as part of the Registration Statement.

4.     The Prospectus Supplement lists BOA National as the "Sponsor" and "Servicer" and discloses that BOA National originated, underwrote, and sold all the loans to the Trust.  The Prospectus Supplement further discloses that "[t]he Mortgage Loans were selected by the Sponsor, with advice from Banc of America Securities LLC (the "Underwriter") as to the characteristics of the Mortgage Loans in each loan group that will optimize marketability of the Certificates, from the Sponsor's portfolio of first lien, closed-end, fixed-rate mortgage loans, and were chosen to meet the requirements imposed by the rating agencies to achieve the credit support percentages listed under 'Summary of Terms—Credit Support.'"  Prospectus Supplement at S-28.

5.     The Registration Statement, Prospectus, and Prospectus Supplement ("the Offering Documents") contained statements about the characteristics and credit quality of the mortgage loans underlying BOAA 2006-1, the creditworthiness of the borrowers of those underlying mortgage loans, and the origination and underwriting practices used to make and approve the loans. Such statements were material to a reasonable investor's decision to invest in mortgage-backed securities by purchasing the Certificates. Unbeknownst to VNB, these statements were materially false, as significant percentages

of the underlying mortgage loans were not originated in accordance with the represented underwriting standards and origination practices and had materially poorer credit quality than what was represented.

6.     The Offering Documents also contained statistical summaries of the percentage of loans secured by owner-occupied properties and the percentage of the loan group's aggregate principal balance with loan-to-value ratios within specified ranges. This information was material to reasonable investors.   The percentage of owner-occupied properties is a material risk factor to the purchasers of Certificates because a borrower who lives in mortgaged property is generally less likely to stop paying his or her mortgage and more likely to take better care of the property.   Similarly, the LTV is material as it is a strong indicator of likelihood of repayment.   However, the GSEs' analysis of certain loans revealed that these statistics were false and omitted material facts.

7.     Defendant BOA Mortgage is responsible for the misstatements and omissions of material fact contained in the Offering Documents because it prepared these documents to market and sell the Certificates.   BOA Mortgage filed the Registration Statement and its amendment, as well as the Prospectus Supplement, and so made the statements contained therein and omissions therefrom.

8.     The Prospectus Supplement attributes to BOA Securities the misrepresentations and omissions in the Offering Documents as to the mortgage loans because it participated in the selection of loans for the Trust based upon the characteristics of each loan.   BOA Securities is therefore responsible for the misrepresentations and omissions in the Offering Documents as to the mortgage loans.

9.      The Prospectus Supplement attributes to BOA National the misrepresentations and omissions in the Offering Documents as to the mortgage loans because it chose the loans for the trust and represented that such loans had the characteristics stated in the Prospectus Supplement.   BOA National is therefore responsible for the misrepresentations and omissions in the Offering Documents as to the mortgage loans.

10.     Defendant BOA Mortgage, BOA Securities, and the Individual Defendants are also directly responsible for the misstatements and omissions of material fact contained in the Registration Statement because they prepared, signed, filed and/or used these documents to market and sell the Certificates.

11.     Defendants BOA National, BOA Corp., and the Individual Defendants are also directly responsible for the misstatements and omissions of material fact contained in the Registration Statements by virtue of their direction and control over BOA Securities and BOA Mortgage, as they directly participated in and exercised dominion and control over the business operations of BOA Securities and BOA Mortgage.  BOA National (the sponsor) and the Individual Defendants directly participated in and exercised dominion and control over the business operations of BOA Mortgage.

12.     The Trust, listed as the "Issuing Entity" in the Prospectus Supplement, did not exist until January 30, 2006, the same date that the Prospectus Supplement was filed with the SEC.

13.     VNB purchased over $25 million worth of the Certificates without knowledge of the misstatements and omissions of material facts in the Registration Statement concerning the quality of the underlying mortgage loans, the creditworthiness

of the borrowers, and the practices used to originate such loans. As a result of Defendants' misstatements and omissions of material fact, VNB has suffered losses in excess of $2.9 million as the value of their holdings has significantly deteriorated.

14.     VNB brings this action against the Defendants for violations of Section 10(b) and Section 20 of the Securities Exchange Act of 1934, 15 U.S.C. § 78a et seq. and the New Jersey Uniform Securities Law (1997), N.J.S.A. §§ 49:3-52, 49:3-71, and for common law negligent misrepresentation.

## PARTIES

*The Plaintiff and the GSEs*

15.     VNB is a Real Estate Investment Trust (REIT) incorporated under New Jersey law with its headquarters in Wayne, New Jersey.  VNB maintains its principal place of business in New Jersey.

*The Defendants*

16.     Defendant BOA Corp. purports to be one of the world's largest financial institutions and delivers banking and financial services throughout the world. BOA Corp. is a Delaware corporation principally located in Charlotte, North Carolina. It maintains offices and conducts substantial business operations at the Bank of America Tower at One Bryant Park, New York, New York. BOA Corp. is the sole parent corporation of each of the other BOA Defendants: BOA National, BOA Securities, ABF Corp., and BOA Mortgage.

17.     Defendant BOA National is one of the nation's largest banks and a wholly-owned subsidiary of BOA Corp. BOA National is a Delaware corporation principally located in Charlotte, North Carolina, with offices and substantial business

operations at the Bank of America Tower at One Bryant Park, New York, New York. BOA National was the sponsor of sixteen of the Securitizations.

18. Defendant MLPF&S is a Delaware corporation and an SEC-registered broker-dealer. It is principally located at 4 World Financial Center, 250 Vesey Street, New York, New York and is a wholly-owned subsidiary of BOA Corp. MLPF&S is liable as successor-in-interest to BOA Securities, which was the lead underwriter for each of the Securitizations and intimately involved in the offerings. On November 1, 2010, BOA Securities – at the time a Delaware Corporation and wholly-owned subsidiary of BOA Corp. – was merged with and into MLPF&S. This merger followed BOA Corp.'s acquisition in January 2009 of MLPF&S as part of its acquisition of Merrill Lynch & Co. Defendant MLPF&S is liable as a matter of law as successor to BOA Securities by virtue of its status as the surviving entity in its merger with BOA Securities.

19. Defendant BOA Mortgage is a Delaware corporation with its principal place of business in Charlotte, North Carolina and offices at the Bank of America Tower at One Bryant Park, New York, New York. BOA Mortgage is a direct subsidiary of BOA National and an indirect wholly-owned subsidiary of BOA Corp. BOA Mortgage was the depositor for six of the Securitizations. BOA Mortgage, as depositor, was also responsible for preparing and filing reports required under the Securities Exchange Act of 1934.

20. Defendant Robert Caruso is an individual residing in New York, New York. Mr. Caruso was a Director of BOA Mortgage. Mr. Caruso was also a Senior Vice President at BOA National. Mr. Caruso signed the Shelf Registration Statement for BOAA 2006-1 and an amendment.

21.     Defendant Juliana Johnson is an individual residing in Charlotte, North Carolina. Ms. Johnson was a Director of BOA Mortgage. Ms. Johnson signed the Shelf Registration Statement for BOAA 2006-1.

22.     Defendant Aashish R. Kamat is an individual residing in New York, New York.  Mr. Kamat was a Director of BOA Mortgage. Mr. Kamat signed the Shelf Registration Statement for BOAA 2006-1 and an amendment.

## JURISDICTION AND VENUE

23.     Jurisdiction of this Court is founded upon 28 U.S.C. § 1331 because the claims asserted herein arise under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b) and 78t(a), and SEC Rule 10b-5, 17 C.F.R. § 240.10b-5. This Court further has jurisdiction over the Securities Exchange Act claims pursuant to Section 27 of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa.

24.     This Court also has jurisdiction under 28 U.S.C. § 1332 because the matter in controversy exceeds $75,000 in value and is between citizens of different states.

25.     This Court has jurisdiction over the statutory claims of violations of the New Jersey Uniform Securities Law (1997), N.J.S.A. §§ 49:3-52, 49:3-71, and for common law negligent misrepresentation pursuant to this Court's supplemental jurisdiction under 28 U.S.C. § 1367(a).

26.     Venue is proper in this district pursuant to Section 27 of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa and 28 U.S.C. § 1391(b).  The BOA Defendants conduct business in this district, BOA Securities is principally located in this district, at least three of the Individual Defendants reside in this district, and the preparation and

dissemination of the Registration Statement occurred in substantial part within this district.

**FACTUAL ALLEGATIONS**

**I.      THE SECURITIZATION**

27.     VNB incorporates and re-alleges each allegation in this Complaint above as if fully set forth herein.  VNB also incorporates and re-alleges Paragraphs No. 33-37 from the GSE complaint, which describe residential mortgage-backed securities in general.

28.     BOA National was the "sponsor" for BOAA 2006-1.  BOA Mortgage was the "Depositor."   The lead underwriter was BOA Securities.  The certificates were issued on January 30, 2006.   BOA National originated the mortgage loans underlying the Certificates.  BOA National selected the loans for the Trust with the assistance of BOA Securities and then sold the mortgage loans to BOA Mortgage.  BOA Securities was the lead or co-lead underwriter.

29.     BOA Mortgage was a wholly-owned, limited purpose financial subsidiary of BOA National. The sole purpose of BOA Mortgage as a depositor was to act as a conduit through which loans acquired by the sponsor could be securitized and sold to investors.

30.     As depositor for BOAA 2006-1, BOA Mortgage was supposed to transfer the mortgage loans to the trust.  As part of the securitization, the trustee, Wells Fargo Bank, N.A., on behalf of the Certificateholders, executed a Pooling and Servicing Agreement ("PSA") with the depositor, BOA Mortgage, and the parties responsible for monitoring and servicing the mortgage loans, BOA National.  The Trust, administered by

the trustee, Wells Fargo Bank, N.A., held the mortgage loans pursuant to the PSA, and VNB and others purchased Certificates backed by such loans.

31.     The Certificates were then sold to investors, which acquired an ownership interest in the assets of BOAA 2006-1.  Each Certificate entitles its holder to a specified portion of the cash-flows from the underlying mortgages supporting that class of certificates. The level of risk inherent in the Certificates was a function of the capital structure of the related transaction and the credit quality of the underlying mortgages.

32.     The Offering Documents describe the underwriting guidelines that purportedly were used in connection with the origination of the underlying mortgage loans. In addition, the Prospectus Supplement purports to provide accurate statistics regarding the mortgage loans in each group, including the ranges of and weighted average FICO credit scores of the borrowers, the ranges of and weighted average loan-to-value ratios of the loans, the ranges of and weighted average outstanding principal balances of the loans, the debt-to-income ratios, the geographic distribution of the loans, the extent to which the loans were for purchase or refinance purposes; information concerning whether the loans were secured by a property to be used as a primary residence, second home, or investment property; and information concerning whether the loans were delinquent.

## II.     THE DEFENDANTS' PARTICIPATION IN THE SECURITIZATION PROCESS

33.     Each of the Defendants, including the Individual Defendants, had a role in the securitization process and/or the marketing the Certificates, which included purchasing the mortgage loans from BOA National, arranging the securitization, selling

the mortgage loans to the depositor, transferring the mortgage loans to the trustee on behalf of the Certificateholders, underwriting the public offering of the Certificates, structuring and issuing the Certificates, and marketing and selling the Certificates to investors.

34.     Depositor Defendant, MLPF&S (as successor-in-interest to BOA Securities), BOA National, and the Individual Defendants who signed the Registration Statement, as well as the BOA Defendants who exercised control over their activities, are liable, for making the misleading statements in the Offering Documents and omitting material facts required to be stated therein or necessary to make the statements contained therein not misleading.

35.     Plaintiff VNB re-alleges Paragraphs No. 54-56, 59-60, 63-69 and 83-88 of the GSE complaint, which describe the Defendants, their roles in securitizations, their incentives to ignore their underwriting standards so as to securitize risky loans, BOA National's sloppy origination and underwriting, and investigations of BOA by federal regulators and state authorities.  Of particular interest was testimony in one investigation from a BOA-retained, independent third party loan evaluator, Clayton Holdings, Inc. ("Clayton").  Clayton found that "in the period from the first quarter of 2006 to the second quarter of 2007, 30 percent of the mortgage loans BOA submitted to Clayton to review in residential mortgage-backed securities groups were rejected by Clayton as falling outside the applicable underwriting guidelines. Of the mortgage loans that Clayton found defective, 27 percent of the loans were subsequently waived in by BOA without proper consideration and analysis of compensating factors and included in securitizations."

III.   **THE   REGISTRATION   STATEMENTS   AND   PROSPECTUS SUPPLEMENTS**

A.   **Compliance With Underwriting Guidelines**

36.   The Prospectus Supplement describes "the mortgage loan underwriting guidelines pursuant to which the mortgage loans underlying the related Securitizations were to have been originated. These guidelines were intended to assess the creditworthiness of the borrower, the ability of the borrower to repay the loan, and the adequacy of the mortgaged property as security for the loan. "

37.   The statements made in the Prospectus Supplement, which formed part of the Registration Statement, "were material to a reasonable investor's decision to purchase and invest in the Certificates because the failure to originate a mortgage loan in accordance with the applicable guidelines creates a higher risk of delinquency and default by the borrower, as well as a risk that losses upon liquidation will be higher, thus resulting in a greater economic risk to an investor."

38.   The Prospectus Supplement and Prospectus contained several key statements with respect to the underwriting standards.  Every loan was evaluated by an automated underwriting decision engine or a human underwriter.  Factors considered include the LTV ratio, debt-to-income ratio, the applicant's credit history, employment, intended occupancy, type of property and purpose of the loan.   According to the Prospectus Supplement, consideration of "compensating factors to offset one or more features of the loan transaction that may not specifically comply with the [underwriting guidelines] may be used" to insure that "on an overall qualitative evaluation," the loan substantially complies with the underwriting guidelines.

**B.    Statements Regarding Occupancy Status of Borrower**

39.    The Prospectus Supplement contained collateral group-level information about the occupancy status of the borrowers.  "Occupancy status refers to whether the property securing a mortgage is to be the primary residence of the borrower, a second home, or an investment property." (GSE Complaint ¶ 96)  The Prospectus Supplement represented that the mortgage loans underlying the Plaintiff's Certificates were 93% owner-occupied.

40.    "The statements about occupancy status were material to a reasonable investor's decision to invest in the Certificates. Information about occupancy status is an important factor in determining the credit risk associated with a mortgage loan and, therefore, the securitization that it collateralizes. Because borrowers who reside in mortgaged properties are less likely to default than borrowers who purchase homes as second homes or investments and live elsewhere, and are more likely to care for their primary residence, the percentage of loans in the collateral group of a securitization that are secured by mortgage loans on owner-occupied residences is an important measure of the risk of the certificates sold in that securitization."  (GSE Complaint ¶ 98)

41.    "Other things being equal, the higher the percentage of loans not secured by owner-occupied residences, the greater the risk of loss to the certificateholders. Even small differences in the percentages of primary/owner-occupied, second home/secondary, and investment properties in the collateral group of a securitization can have a significant effect on the risk of each certificate sold in that securitization, and thus, are important to the decision of a reasonable investor whether to purchase any such certificate."  (GSE Complaint ¶ 99)

C.    **Statements Regarding Loan-to-Value Ratios**

42.    "The loan-to-value ratio of a mortgage loan, or LTV ratio, is the ratio of the balance of the mortgage loan to the value of the mortgaged property when the loan is made."  (GSE Complaint ¶ 100)

43.    "The denominator in the LTV ratio is the value of the mortgaged property, and is generally the lower of the purchase price or the appraised value of the property.  In a refinancing or home-equity loan, there is no purchase price to use as the denominator, so the denominator is often equal to the appraised value at the time of the origination of the refinanced loan.  Accordingly, an accurate appraisal is essential to an accurate LTV ratio. In particular, an inflated appraisal will understate, sometimes greatly, the credit risk associated with a given loan." (GSE Complaint ¶ 101)

44.    The Prospectus Supplement represents that 93% of the loans underlying Plaintiff's Certificates had LTV ratio at or less than 80 percent and only .44% had an LTV in excess of 100%.

45.    "The LTV ratio is among the most important measures of the risk of a mortgage loan, and thus, it is one of the most important indicators of the default risk of the mortgage loans underlying the Certificates. The lower the ratio, the less likely that a decline in the value of the property will wipe out an owner's equity, and thereby give an owner an incentive to stop making mortgage payments and abandon the property. This ratio also predicts the severity of loss in the event of default. The lower the LTV ratio, the greater the "equity cushion," so the greater the likelihood that the proceeds of foreclosure will cover the unpaid balance of the mortgage loan."  (GSE Complaint ¶ 104)

46.     "Thus, LTV ratio is a material consideration to a reasonable investor in deciding whether to purchase a certificate in a securitization of mortgage loans. Even small differences in the LTV ratios of the mortgage loans in the collateral group of a securitization have a significant effect on the likelihood that the collateral groups will generate sufficient funds to pay certificateholders in that securitization, and thus are material to the decision of a reasonable investor whether to purchase any such certificate."  (GSE Complaint ¶ 105)

### D.     Statements Regarding Credit Ratings

47.     VNB re-alleges Paragraphs No. 106-109 of the GSE complaint, which describe the role of credit ratings in securitizations, how credit ratings are determined, the importance of credit ratings and "credit enhancement" as a predictor of repayment, the widespread reliance on credit ratings by investors, and the relative safety of a "AAA" rating given the historical loss rate of less than .05 percent at the time of Plaintiff's purchase.  BOA National provided the information to the credit rating agencies that underlies the ratings for the Certificates. As noted elsewhere, the information was incorrect and resulted in incorrect ratings.

48.     The Certificates purchased by VNB were AAA at issuance and at the time of its purchase.  The Prospectus Supplement states that the Certificates would not have been offered or sold without the AAA rating or the equivalent.

IV.     **THE FALSITY OF STATEMENTS IN THE OFFERING DOCUMENTS**

    A.     **The Statistical Data Provided in the Prospectus Supplements Concerning Owner Occupancy and LTV Ratios Was Materially False**

49.     VNB re-alleges Paragraphs No. 110–121 of the GSE complaint, which describe the extensive loan reviews it conducted which revealed, "on a statistically-significant basis, material misrepresentations of underwriting standards and of certain key characteristics of the mortgage loans across the Securitizations. The data review demonstrates that the data concerning owner occupancy and LTV ratios was materially false and misleading."

50.     The misrepresentations found by the FHFA as to owner occupancy in various securitizations, along with the substantially similar representations as to underwriting standards, demonstrate a pattern of ignoring or falsifying the LTV ratios and owner occupancy numbers.  The Offering Documents represent that all loans in BOAA 2006-1 were originated, underwritten, and securitized in the same manner. Accordingly, the loans underlying the Certificates purchased by VNB were similarly misrepresented as to LTV and owner-occupancy.

    B.     **The Originators of the Underlying Mortgage Loans Systematically Disregarded Their Underwriting Guidelines**

51.     VNB re-alleges Paragraphs No. 122-123, 130-138 from the GSE complaint, which describe generally BOA National's shoddy and non-compliant underwriting.  The paragraphs further explain the motivation to push as much product through the pipeline as possible so as to maximize production and profits derived from their mortgage lending businesses. The various investigations into originators' underwriting practices by government officials and private litigants, which have revealed

widespread abandonment of originators' reported underwriting guidelines during the relevant period, the collapse of the Certificates' credit ratings, and the surge in delinquency and default in the mortgages in BOAA 2006-1 are also recounted.

52.     VNB re-alleges Paragraphs No. 139-144 of the GSE complaint, which describe a "total collapse in the credit ratings of the GSE Certificates, typically from AAA or its equivalent to non-investment speculative grade," which FHFA construes as "further evidence of the originators' systematic disregard of underwriting guidelines."

53.     The Certificates that Fannie Mae and Freddie Mac purchased in BOAA 2006-1 were originally assigned credit ratings of AAA or its equivalent.  The Certificates are currently rated Caa3 by Moody's and C by Fitch.

54.     The AAA ratings were artificially inflated, however, as a result of the very same misrepresentations that the Defendants made to investors.   "BOA provided or caused to be provided loan-level information to the rating agencies that they relied upon in order to calculate the Certificates' assigned ratings, including the borrower's LTV ratio, debt-to-income ratio, owner occupancy status, and other loan-level information described in aggregation reports in the Prospectus Supplements. Because the information that BOA provided or caused to be provided was false, the ratings were inflated, and the level of subordination that the rating agencies required for the sale of AAA (or its equivalent) Certificates was inadequate to provide investors with the level of protection that those ratings signified. As a result, [investors] paid Defendants inflated prices for purported AAA (or its equivalent) Certificates, unaware that those Certificates actually carried a severe risk of loss and carried inadequate credit enhancement."   (GSE Complaint ¶ 141)

55.     VNB re-alleges Paragraphs No. 143-145 of the GSE complaint, which show that a significant percentage of the mortgage loans backing the Certificates it purchased in 23 securitizations have defaulted, have been foreclosed upon, or are delinquent, resulting in massive losses. The overall poor performance of the mortgage loans is a direct consequence of the fact that they were not underwritten in accordance with applicable underwriting guidelines as represented in the Registration Statements.

56.     With regard to BOAA 2006-1, the Certificates purchased by VNB have performed even worse than those purchased by Fannie Mae and Freddie.  In August of 2011, the two classes of Certificates purchase by Fannie Mae and Freddie in BOAA 2006-1 had the following performance statistics[3]:

| | | |
|---|---|---|
| 1CB1: | Foreclosure – | 1.95% |
| | REO – | 1.84% |
| | Delinquent by 60 days or more -- | 7.98% |
| | Delinquent by 90 days or more -- | 7.5% |
| | | |
| 3CB1: | Foreclosure – | 8.29% |
| | REO – | 4.71% |
| | Delinquent by 60 days or more -- | 17.08% |
| | Delinquent by 90 days or more -- | 16.94% |

---

[3] The performance statistics are based upon the composition of the pools as of August 2011.

In contrast, the certificates purchased by VNB had the following performance statistics in August 2011:

| | | |
|---|---|---|
| 4CB1: | Foreclosure – | 6.79% |
| | REO – | 3.97% |
| | Delinquent by 60 days or more-- | 24.96% |
| | Delinquent by 90 days or more-- | 24.26% |

## V.   VNB'S PURCHASES AND RESULTING DAMAGES

57.   Prior to September 29, 2006, the Defendants made no disclosures regarding the misrepresentations and omissions in the Offering Documents nor did they file any updated financials or amendments to the Offering Documents.

58.   The statements and assurances in the Offering Documents regarding the credit quality and characteristics of the mortgage loans underlying the Certificates and the origination and underwriting practices pursuant to which the mortgage loans were originated, which were summarized in such documents, were material to a reasonable investor's decision to purchase the Certificates.

59.   The false statements of material facts and omissions of material facts in the Offering Documents, especially in the Prospectus and Prospectus Supplement filed on January 30, 2006, directly caused VNB to purchase BOAA 2006-1 Certificates and to suffer millions of dollars in damages, including without limitation depreciation in the value of the Certificates.   VNB relied in particular on credit ratings and statements concerning loan-to-value ratios, for which it had set targets, in making the decision to purchase the BOAA 2006-1 Certificates.   The mortgage loans underlying the Certificates experienced defaults and delinquencies at a much higher rate than they would have had

BOA National adhered to its underwriting guidelines.   VNB has a loss of over $2.9 million.

60.   VNB's losses have been much greater than they would have been if the mortgage loans had the credit quality represented in the Registration Statements.

61.   BOA's misstatements and omissions in the Offering Documents regarding the true characteristics of the loans were the proximate cause of VNB's losses related to their purchases of the Certificates.   Based upon sales of the Certificates or similar certificates in the secondary market, BOA proximately caused millions of dollars in damages to VNB in an amount to be determined at trial.

## VI.   DEFENDANTS' FAILURE TO MITIGATE

62.   BOA National and its affiliated servicers are in a position to mitigate the damages associated with Defendants' misrepresentations and omissions.   On information and belief based on the credible sources set forth herein, in spite of their position to mitigate the damages of Plaintiff and other holders of Certificates, Defendants have acted for their own benefit at the expense of Plaintiff and other holders of Certificates. Specifically, Defendants have:

a.   Engaged in a massive robo-signing scheme, as reported by numerous sources, including the Attorneys General of numerous states;

b.   Engaged in illicit foreclosure activities, including: (i) foreclosures against borrowers who were not delinquent on payments, as reported in various media outlets; and (ii) foreclosures against members of the armed services in violation of the Servicemembers Civil Relief Act (SCRA) (formerly the Soldiers'

and Sailors' Civil Relief Act), as reported in the Department of Justice's complaint against and settlement with Bank of America and its affiliates;

      c.      Marked-up fees for default–related services, as reported in the Federal Trade Commission's complaint against and settlement with BAC Home Loans Servicing, LP and its affiliates;

      d.      Used an affiliate to force-place insurance at inflated rates on homeowners struggling to make payments, as reported by AMERICAN BANKER;

      e.      Demonstrated "critical deficiencies and shortcomings in foreclosure governance processes, foreclosure document preparation processes, and oversight and monitoring of third party law firms and vendors", as reported in an examination by the Office of Comptroller of the Currency, the Office of Thrift Supervision, the Federal Deposit Insurance Corporation, and the Federal Reserve Board;

      f.      Failed to properly care for and dispose of unoccupied properties, as reported, for example, in a complaint by the City of Buffalo;

      g.      Engaged in "unsafe or unsound banking practices" "[i]n connection with certain foreclosures of loans in its residential mortgage servicing portfolio," as reported in a consent order with the Office of the Comptroller of the Currency;

      h.      Used affiliate Recon Trust, N.A. to foreclose upon borrowers, which the Utah Attorney General has "determined … is not in compliance with Utah Code §§ 57-1-21(3) and 57-1-23 when conducting real estate foreclosures in the state of Utah."

**FIRST CAUSE OF ACTION**

**Violation of Section 10(b) of the Securities Exchange Act of 1934
and Rule 10b-5
(Against Defendants BOA Mortgage, MLPF&S/BOA Securities, BOA National,
Robert Caruso, Juliana Johnson, and Aashish Kamat)**

63.     Plaintiff re-alleges each allegation above as if fully set forth herein.

64.     This claim is brought by Plaintiff VNB pursuant to Section 10(b) of the
Securities Exchange Act of 1934 ("Section 10(b)") based upon the misrepresentations
and omissions about the mortgage loans underlying the Certificates purchased by
Plaintiff.   Those misrepresentations and omissions concerned understated LTV ratios,
inflated owner-occupancy rates, and the failure of BOA National to follow its
underwriting guidelines.   The misrepresentations and omissions were in the Offering
Documents.  As set forth above, Defendant BOA Mortgage filed the Offering Documents
and so made the misrepresentations and omissions therein.  The Offering Documents note
that BOA National selected the loans for BOAA 2006-1, in collaboration with BOA
Securities, now MLPF&S, based upon certain loan characteristics known to and disclosed
by BOA National as originator and underwriter of the loans and sponsor of and servicer
for the securitization.   BOA Securities likewise made the misrepresentations and
omissions with regard to LTVs, owner occupancy, and underwriting in connection with
its involvement in the selection of loans for BOAA 2006-1.  Robert Caruso, Juliana
Johnson, and Aashish Kamat signed the Registration Statement for BOAA 2006-1 and so
made the statements therein.

65.     Defendants disseminated or approved the false statements specified above,
which they knew or deliberately disregarded were misleading in that they contained

misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

66.     Defendants violated Section 10(b) and Rule 10b-5 promulgated thereunder in that they:

(a)     employed devices, schemes, and artifices to defraud;

(b)     made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(c)     engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff in connection with its purchase of BOAA 2006-1 Certificates.

67.     Plaintiff VNB has sustained substantial damages in that, in reliance on the untrue statements made as to the LTV, owner occupancy, and underwriting standards applicable to the loans in BOAA 2006-1, as well as the other statements in the Offering Documents, it paid an artificially inflated price for its BOAA 2006-1 Certificates. Plaintiff would not have purchased the BOAA 2006-1 Certificates at the price it paid, or at all, if it had been aware that the market price had been artificially and falsely inflated by Defendants' misleading statements.

## SECOND CAUSE OF ACTION

### Violation of Section 20(a)(2) of the Securities Exchange Act of 1934
### (Against BOA Corp., MLPF&S/BOA Securities, BOA National and the Individual Defendants)

68.     Plaintiff re-alleges each allegation above as if fully set forth herein. Plaintiff also re-alleges Paragraphs No. 188-195 of the GSE complaint, which describe the control exerted by the other Defendants over BOA Mortgage, the Depositor and filer for the Offering Documents.

69.     This claim is brought under Section 20(a) of the Securities Exchange Act of 1934 ("Section 20(a)") against BOA Corp., BOA National, BOA Securities, and the Individual Defendants for controlling-person liability with regard to the Section 10(b) and Rule 10b-5 cause of action set forth above.

70.     The BOA Corp., BOA Securities, BOA National, and the Individual Defendants at all relevant times participated in the operation and management of BOA Mortgage and conducted and participated, directly and indirectly, in the conduct of BOA Mortgage's business affairs.  Such Defendants acted as controlling persons of BOA Mortgage within the meaning of Section 20(a).  By reason of their positions with BOA Mortgage, and their ownership interest in BOA Mortgage or their operation of a common enterprise to securitize residential mortgage loans through BOA Mortgage, such Defendants had the power and authority to cause BOA Mortgage to engage in the wrongful conduct complained of herein.  BOA Corp., BOA National, and BOA Securities controlled the Individual Defendants and all of their employees.  BOA Corp., BOA National, BOA Securities and the Individual Defendants are controlling persons within the meaning of Section 20(a) by virtue of their actual power over, control of, ownership

of, and/or directorship of BOA Mortgage at the time of the wrongs alleged herein and as set forth herein, including their control over the content of the Offering Documents.  By reason of such conduct and control, Defendants are liable pursuant to Section 20(a).

**THIRD CAUSE OF ACTION**

**Violation of the New Jersey Uniform Securities Law, N.J.S.A. §§ 49:3-52, 49:3-71(a)
(Against MLPF&S/BOA Securities)**

71.     Plaintiff re-alleges each allegation above as if fully set forth herein.

72.     BOA Securities disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

73.     BOA Securities violated N.J.S.A. §§ 49:3-52 and 49:3-71(a) in that it, in connection with the offer, sale, or purchase of any security, directly or indirectly:

(a)     employed devices, schemes, and artifices to defraud;

(b)     made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(c)     engaged in acts, practices, and a course of business that operated as a fraud or deceit upon plaintiff in connection with its purchase of BOAA 2006-1 Certificates.

74.     BOA Securities knew of the untruth or omissions and intended to deceive VNB.

75.     Plaintiff VNB has sustained substantial damages in that the untrue statements made as to the LTV, owner occupancy, and underwriting standards applicable to the loans in BOAA 2006-1, as well as the other statements in the Offering Documents, caused it to pay an artificially inflated price for its BOAA 2006-1 Certificates.  Plaintiff would not have purchased the BOAA 2006-1 Certificates at the price it paid, or at all, if it had been aware that the market price had been artificially and falsely inflated by BOA Securities' misleading statements.

76.     Plaintiff VNB was in privity with BOA Securities and accepted an offer to sell the BOAA 2006-1 Certificates and purchased the Certificates in New Jersey.

### FOURTH CAUSE OF ACTION

**Violation of the New Jersey Uniform Securities Law, N.J.S.A. §§ 49:3-52, 49:3-71(d)
(Against all Defendants but MLPF&S/BOA Securities)**

77.     Plaintiff re-alleges each allegation above as if fully set forth herein.

78.     This claim is brought by Plaintiff under N.J.S.A. § 49:3-71(d) for control person liability against BOA Corp., BOA National, BOA Mortgage, and the Individual Defendants.  BOA Corp., BOA National, BOA Mortgage, and the Individual Defendants are controlling persons within the meaning of N.J.S.A. § 49:3-71(d) by virtue of their actual power over, control of, ownership of, and/or directorship of BOA Securities at the time of the wrongs alleged herein and as set forth herein, including their control over the content of the Offering Documents.  Such Defendants controlled BOA Securities directly or indirectly and materially aided in the conduct giving rise to liability.  As such, they are liable jointly and severally with and to the same extent as BOA Securities.

## FIFTH CAUSE OF ACTION

### Common Law Negligent Misrepresentation
### (Against MLPF&S/BOA Securities, BOA Mortgage, and BOA National)

79.     Plaintiff re-alleges each allegation above as if fully set forth herein.

80.     This is a claim for common law negligent misrepresentation against Defendants MLPF&S (as successor-in-interest to BOA Securities), BOA National and BOA Mortgage.

81.     As the mortgage loan originator, underwriter, and seller of the mortgage loans in BOAA 2006-1, as the entity that determined what loans would go into BOAA 2006-1, and as the sponsor and servicer for the securitization, BOA National knew or should have known the characteristics of the mortgage loans and knew or should have known that the LTVs were understated, the owner occupancies overstated, and that it had not adhered to its underwriting standards in making the loans.

82.     BOA Securities, as underwriter, and in its role in selecting the mortgage loans to sell to the Trust, was obligated –and had the opportunity – to perform sufficient due diligence to ensure that the Offering Documents did not contain an untrue statement of a material fact or omit to state a material fact required to be stated therein or necessary to make the statements therein not misleading.  As a result of its privileged position as underwriter – which gave it access to loan file information and obligated it to perform adequate due diligence to ensure the accuracy of the Offering Documents – BOA Securities had unique, exclusive, and special knowledge about the underlying mortgage loans.  As discussed above, MLPF&S is liable as successor-in-interest to BOA Securities, which was merged into it in November 2010.

83.    BOA Securities also had unique, exclusive, and special knowledge of the work of third-party due diligence providers, such as Clayton, which identified significant failures by originators to adhere to the underwriting standards.  VNB, like other investors, had no access to borrower loan files prior to purchasing its Certificates.  Accordingly, when determining whether to purchase Certificates, VNB could not evaluate the underwriting quality or the servicing practices of the mortgage loans.  VNB therefore reasonably relied on BOA Securities' knowledge and the express representations made in the Offering Documents.

84.    BOA Securities, BOA Mortgage, and BOA National were aware that investors reasonably relied on BOA Securities', BOA Mortgage's, and BOA National's reputations and unique, exclusive, and special expertise and experience, as well as their express representations made in the Offering Documents, and that VNB depended upon these Defendants for complete, accurate, and timely information. The degree to which the underlying mortgage loans were actually originated in compliance with the underwriting guidelines was known to these Defendants and was not known, and could not be determined, by VNB prior to its purchase of Certificates.

85.    Based upon their unique, exclusive, and special knowledge and expertise about the loans held by the Trusts, BOA Securities, BOA Mortgage, and BOA National had a duty to provide complete, accurate, and timely information regarding the mortgage loans and the securitizations. BOA Securities, BOA Mortgage, and BOA National negligently breached their duty to provide such information by instead making untrue statements of material facts or otherwise misrepresenting material facts about the mortgage loans in BOAA 2006-1. The misrepresentations and omissions set forth above

include misrepresentations as to LTV, owner occupancies, and compliance with underwriting standards, as well as to the accuracy of the represented credit ratings.

86.     In addition, having made misrepresentations about the mortgage loans and the facts bearing on the riskiness of the Certificates, BOA Securities, BOA Mortgage, and BOA National had a duty to correct misimpressions left by their statements, including with respect to any "half truths." VNB was entitled to rely upon BOA Securities', BOA Mortgage's, and BOA National's representations about BOAA 2006-1 and the mortgage loans.  These Defendants failed to correct in a timely manner any of their misstatements or half truths, including misrepresentations as to compliance with underwriting guidelines for the mortgage loans.

87.     VNB purchased Certificates based upon the negligent misrepresentations by BOA National, BOA Mortgage, and BOA Securities.

88.     VNB relied upon the accuracy of the data transmitted to it as reflected in the Prospectus Supplement and Prospectus. In particular, VNB relied upon the credit ratings, which were based on the information provided by BOA Mortgage, BOA National, and BOA Securities relating to the quality of the underlying loans and the structure of the securitization. These credit ratings represented a determination by the credit rating agencies that the VNB Certificates were AAA quality (or its equivalent) – meaning the Certificates had an extremely strong capacity to meet the payment obligations described in the PSA.

89.     Detailed information about the underlying collateral and structure of BOAA 2006-1 was provided to the credit rating agencies by, upon information and belief, BOA National. The credit rating agencies based their ratings on the information

provided.  VNB relied on the accuracy of the credit ratings assigned to the Certificates by the credit rating agencies, and upon the accuracy of BOA's representations in the Prospectus Supplement.

90.     In addition, VNB relied on representation that the originator of the mortgage loans, BOA National, had acted in conformity with its underwriting guidelines, which were described in the Prospectus and Prospectus Supplement.

91.     In purchasing the Certificates, VNB justifiably relied on the negligent and false representations and omissions of material fact detailed above which were reflected in the Prospectus Supplements.

92.     But for the above negligent misrepresentations and omissions, VNB would not have purchased or acquired the Certificates at the price paid, or at all, because those misrepresentations and omissions were material to its decision to acquire Certificates.

93.     VNB was damaged in an amount to be determined at trial as a direct, proximate, and foreseeable result of the BOA Mortgage's, BOS National's and BOA Securities' negligent misrepresentations, including any half truths.


### SIXTH CAUSE OF ACTION

**Common Law Fraud**
**(Against MLPF&S/BOA Securities, BOA Mortgage, and BOA National)**

94.     Plaintiff re-alleges each allegation above as if fully set forth herein.

95.     In the Offering Documents and any related statements, Defendants MLPF&S (as successor-in-interest to BOA Securities), BOA Mortgage, and BOA National made fraudulent and false statements of material fact, and omitted material facts

necessary to make their statements, in light of the circumstances under which the statements were made, not misleading.

96.     As the corporate parent, Defendant BOA National directed the activities of BOA Securities and BOA Mortgage.

97.     BOA Securities, BOA Mortgage, and BOA National knew at the time they sold and marketed each of the Certificates that the foregoing statements were false, or at the very least made recklessly without any belief in the truth of the statements.

98.     BOA Securities, BOA Mortgage, and BOA National made these materially misleading statements and omissions for the purpose of selling the Certificates, i.e., inducing VNB and others to purchase the Certificates. Furthermore, these statements related to these Defendants' own acts and omissions.

99.     BOA Securities, BOA Mortgage, and BOA National knew that VNB was relying on their expertise and the truth of their expert assessment of the characteristics of the mortgage loans in BOAA 2006-1, and they encouraged such reliance through the Offering Documents and any related statements.

100.    BOA Securities, BOA Mortgage, and BOA National knew VNB would rely upon their representations in connection with VNB's decision to purchase the Certificates.

101.    BOA Securities, BOA Mortgage, and BOA National were in a position of unique and superior knowledge regarding the true facts concerning the foregoing material misrepresentations and omissions.

102.    It was only by making such representations that BOA Securities, BOA Mortgage, and BOA National were able to induce VNB to buy the Certificates. VNB, as

well as the other investors, would not have purchased at all or at the price paid or otherwise acquired the Certificates but for BOA Securities', BOA Mortgage's, and BOA National's fraudulent representations and omissions about the quality of the Certificates.

103.    VNB justifiably, reasonably, and foreseeably relied on BOA National's, BOA Securities' and BOA Mortgage's representations and false statements and omissions regarding the quality of the Certificates.

104.    As a result of the false and misleading statements and omissions, as alleged herein, VNB has suffered substantial damages.

105.    Because BOA National, BOA Securities, and BOA Mortgage committed these acts and omissions maliciously, wantonly, and oppressively, and because the consequences of these acts knowingly affected the general public, including but not limited to all persons with interests in the Certificates, Plaintiffs are entitled to punitive damages.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff prays for relief as follows:

106.    An award in favor of Plaintiff against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, but including:

a.    Rescission and recovery of the consideration paid for the Certificates, with interest thereon less any income;

b.    Alternatively, monetary losses, including any diminution in value of the Certificates, as well as lost principal and lost interest payments thereon;

c.    Punitive damages;

    d.       Attorneys' fees and costs;

    e.       Prejudgment interest at the maximum legal rate; and

    f.       Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

107.    Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff hereby demands a trial by jury on all issues triable by jury.


Dated: September 28, 2011        Respectfully Submitted,
       New York, New York


                          s/Peter N.  Tsapatsaris
                          Peter N. Tsapatsaris
                          PETER N. TSAPATSARIS, LLC
                          200 East 33rd Street
                          27th Floor, Suite D
                          New York, NY 10016
                          Office: (646) 490-7795
                          peter@pntlaw.com
                          *Attorney for Plaintiff*


OF COUNSEL:

Talcott J. Franklin[*]
TALCOTT FRANKLIN P.C.
208 North Market Street
Suite 200
Dallas, Texas 75202
214.736.8730 phone
877.577.1356 facsimile
tal@talcottfranklin.com

* Licensed only in North Carolina, South Carolina (inactive), and Texas.  Pro hac vice application to be submitted.